**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL E. ALLISON, | CASE NO. 5:16-cv-2388 |
| Plaintiff, | JUDGE SOLOMON OLIVER, JR. |
| v. | MAGISTRATE JUDGE DAVID A. RUIZ |
| NANCY A. BERRYHILL, *Acting Comm'r of Social Security*, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

Plaintiff, Michael E. Allison ("Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"), denying his applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

### I. Procedural History

On April 19, 2013, Plaintiff filed his applications for POD, DIB, and SSI, alleging a disability onset date of December 1, 2012. (Transcript ("Tr.") 173-180). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 109-124). Plaintiff participated in the hearing on August 11, 2015, was represented by counsel, and testified.[1] (Tr. 26-63). A vocational expert ("VE") also participated and testified. *Id*. On September 9, 2015, the ALJ found Plaintiff not disabled. (Tr. 20). On August 9, 2016, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-3). On September 27, 2016, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 13, 15 & 16).

Plaintiff asserts the following assignments of error: (1) the ALJ did not properly evaluate Allison's diarrhea as a symptom of his severe impairments; (2) the ALJ did not properly evaluate Allison's credibility; and, (3) the ALJ did not meet his burden at Step Five of the Sequential Evaluation. (R. 13).

### II. Evidence

**A. Personal and Vocational Evidence**

Plaintiff was born in December of 1959 and was 53-years-old on the alleged disability onset date. (Tr. 173, 179). He had a high school education and was able to communicate in English. (Tr. 34). He had past relevant work as a sales clerk. (Tr. 19).

---

1 An earlier hearing that began on April 17, 2015 was continued so that Plaintiff could obtain counsel and additional medical records. (Tr. 64-72).

**B. Relevant Medical Evidence**[2]

    **1. Treatment Records**

On February 7, 2012, David A. Watkins, M.D., in a letter to the Internal Medicine Center of Akron, reported that Plaintiff's HIV was stable on therapy. (Tr. 321-322). He indicated Plaintiff had no diarrhea. (Tr. 317).

On October 28, 2012, Plaintiff reported to Dr. Watkins that he had "[n]o problems with work or ADL's [activities of daily living.]" (Tr. 313).

On October 8, 2013, Plaintiff's active problems included diarrhea and it was noted that he began taking Immodium. (Tr. 360, 438).

On October 14, 2013, Plaintiff first mentions problems with diarrhea to Dr. Watkins. (Tr. 393-395). Dr. Watkins treatment notes contains the following:

> New problem that is really old but he never mentioned this before. He has diarrhea he says it has been going on for years, but in the last few years it has been getting worse. I asked him why he did not tell me that before, and he said he never thought about it. I even went over his June 10th, 2013 note and he denied diarrhea in the review of systems, he said he just never thought about it much.
>
> The diarrhea is described as watery when it occurs it is most of the day. The occurrences are sporadic. However, they could be from every other day to every few days to every other week. He says after a day of diarrhea then he is fine. He gives no association with any kind of food so I told him to pay attention to that. He has no blood, no mucus and he is not ill with this and has no cramps.

(Tr. 393). Dr. Watkins ordered additional studies regarding Plaintiff's diarrhea in addition to the ones ordered previously by Dr. Chapa. (Tr. 394). Plaintiff was due to see Dr. Salvino from

---

[2] The recitation of the evidence is not intended to be exhaustive. As Plaintiff's assignments of error hinge entirely upon alleged limitations stemming from diarrhea, the court limits its discussion of the medical evidence primarily to those records dealing with this condition.

3

gastroenterology.³ *Id*.

On June 9, 2014, Plaintiff was seen by Dr. Watkins, who noted Plaintiff was off work and applying for disability. (Tr. 350, 391). Dr. Watkins noted Plaintiff's "chronic diarrhea was about the same, varies day to day from a little bit to a lot, has been worked up by infectious disease at various times in the past with negative work up, and sees Dr. Salvino." *Id*.

On June 19, 2014, Plaintiff was seen by Daniel Chapa, M.D. (Tr. 361-365). Plaintiff reported two to ten bowel movements daily, indicating his diarrhea "hasn't changed much lately." (Tr. 361). Plaintiff reported he had diarrhea for over forty years, even before his HIV diagnosis. *Id*. Dr. Chapa did not believe the diarrheas was infectious in nature and noted "may possibly be IBS [irritable bowel syndrome]." *Id*. Plaintiff's diarrhea was noted to be stable, and no additional tests were ordered. (Tr. 364). Dr. Chapa recommended that Plaintiff follow up with Dr. Salvino. (Tr. 364).

On October 13, 2014, Plaintiff told Dr. Watkins he was "doing good" overall. (Tr. 389-390, 444-445). Dr. Watkins noted there was "[n]o mention of chronic diarrhea today." *Id*.

During a November 19, 2014, Dr. Chapa's gastrointestinal review of symptoms revealed "No loss of appetite, No dysphagia, No regurgitation, No bloating, No abdominal pain, No

---

³ Neither party cites treatment notes from Dr. Salvino, who appears to be a gastroenterologist. It does not appear that his treatment notes have been made part of the record, an unfortunate development given that Plaintiff's disability claim hinges on the severity of his diarrhea. A treatment note from Dr. Chapa on June 19, 2014 indicates that Plaintiff first saw Dr. Salvino on August 14, 2013 and last saw him on May 14, 2015. (Tr. 455). The court will not speculate why records from Dr. Salvino are not in the record, but notes neither party has argued error and "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986); 20 C.F.R. § 404.1512 ("You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled. This duty is ongoing and requires you to disclose any additional related evidence about which you become aware.")

4

nausea, Diarrhea, No change in bowel habits, No constipation, No blood in stool, No vomiting. (Tr. 431). Dr. Chapa noted Plaintiff's diarrhea was fairly stable. (Tr. 429)

On January 22, 2015, Dr. Watkins' treatment notes included diarrhea in his assessment and plan, but no discussion is noted related to the issue. (Tr. 387-388, 442-443).

Two weeks later, on February 9, 2015, Dr. Watkins' treatment notes did not include diarrhea in his assessment and plan, and again reveals no discussion related to the issue. (Tr. 385-386).

On May 14, 2015, Plaintiff reported to Dr. Chapa that his diarrhea was about the same. (Tr. 460). Dr. Chapa included Plaintiff's description from earlier treatment notes. *Id*. A review of Plaintiff's prescription medications did not include any medication for diarrhea. (Tr. 272-273).

On May 22, 2015, Plaintiff reported to Dr. Watkins that he had fatigue issues on and off. (Tr. 446). Treatment notes did not include diarrhea in the assessment and plan, and reveals no discussion related to the issue. (Tr. 446-447).

On July 31, 2015, less than two weeks before the hearing, Plaintiff told Dr. Chapa that he felt his diarrhea had become worse over the last 4-5 years. (Tr. 455). Plaintiff felt "that he is having more issues with sphincter control." He reported that his bowel movements were two per day to every 15 minutes. *Id*. On physical gastrointestinal examination, Plaintiff's "Bowel sounds normal, Abdomen soft, No hepatomegaly, No splenomegaly, No abdominal tenderness, No abdominal mass, No hernia, **Rectal exam abnormal, Anal tone abnormal,** No hemorrhoids, No melena. **Anal tone seems somewhat decreased**." (Tr. 457 (emphasis in original).

**2. Medical Opinions Concerning Plaintiff's Functional Limitations**

On April 19, 2013, Dr. Watkins completed a form for the State Agency indicating that

5

laboratory testing confirmed Plaintiff was infected with HIV.[4] (Tr. 303-306). He indicated Plaintiff had no bacterial, fungal, or viral infections; no malignant neoplasms; no hematological or neurological abnormalities; no HIV wasting syndrome; no cardiomyopathy or nephropathy; and, most pertinent to this case, ***no diarrhea*** lasting for one month or longer that was resistant to treatment or required intravenous hydration. (Tr. 303-304) (emphasis added). Dr. Watkins did note the presence of fatigue and nausea. (Tr. 305). In addition, Plaintiff had developed diabetes mellitus "since being on [treatment along with] memory issues." (Tr. 305).

**C. Relevant Hearing Testimony**

At the August 11, 2017 hearing, Plaintiff testified as follows:

- He last worked in 2013 at Lowe's as a sales associate. (Tr. 34-35). He worked there for eight years. (Tr. 35). He performed the job standing and the most he lifted was 50 pounds. *Id*. At one point, he was the department head, which involved a few hours of paperwork per day and the remainder of the time "would be working on the floor, supervising, and waiting on customers." (Tr. 36-37). He also worked as a sales specialist in doors and windows. (Tr. 38). His job at Lowe's ended in April of 2013 after numerous complaints about his personality. (Tr. 42).

- He also previously worked at Target, Gabrielle Brothers, Dillard's, and K-Mart. (Tr. 38-41).

- He did not look for a job after Lowe's due to diarrhea becoming a bigger issue and "not being able to be far from a restroom." (Tr. 43). It had become an issue within his last year at Lowe's. *Id*. Since he left Lowe's, his diarrhea has "stayed the same." (Tr. 43).

- Some days he has to go to the bathroom every ten minutes, other days just a couple of times per day. (Tr. 44). In the past two weeks, the former outnumbered the latter. *Id*.

- He takes medication for HIV, diabetes, cholesterol, and high blood pressure. (Tr. 45). All his medications from the last 15 to 20 years have caused diarrhea as a side effect. (Tr. 44). He did not have any other side effects from his medications. (Tr. 46).

- He became HIV positive in 1995, but does not have any active symptoms. (Tr. 45).

---

4 Although page 1 one of the document is dated April 19, 2013 (Tr. 303), the signature page appears to be dated April 29, 2013. (Tr. 305).

6

- He was diagnosed with diabetes five years earlier, but was not on insulin and instead took a prescription that helped control his blood sugar levels. (Tr. 46).

- He did not believe he could work because he "would have to be able to have available a restroom at the drop of a hat" due to his diarrhea. (Tr. 47). If his diarrhea was under control, he believes he could probably work. (Tr. 49, 51-52).

- He grocery shops once per month. (Tr. 47). He has a driver's license, but has been taking the bus a couple of times per week. (Tr. 48). He can watch television for an hour before needing to use the restroom. (Tr. 49).

- He has not been given any medication to get his diarrhea under control. (Tr. 49). He has mentioned the diarrhea to a doctor, and recently made an appointment to a see a gastro-intestinal specialist. (Tr. 50). When the ALJ asked whether he has been telling his doctors all along about the need, frequency, and urgency of his diarrhea, Plaintiff stated that he "mentioned it in passing," and "never made it an issue to make sure that they followed through with it." (Tr. 50).

- He had not ever had the need to wear adult diapers. (Tr. 50).

- He has mentioned to his doctors that he is fatigued and received Vitamin D, which helped. (Tr. 51).

- He is 5'11 tall and weighs 213 pounds. (Tr. 52).

- He attends church, which takes 2.5 to 3 hours and is usually all right there. (Tr. 55).

The VE summarized Plaintiff's past relevant work as follows: sales clerk, Dictionary of Occupational Titles ("DICOT") 290.477-014, semi-skilled with an SVP of 3, light exertional generally but performed at the medium exertional level; store laborer, DICOT 922.687-058, unskilled with an SVP of 2, medium exertional level; material handler, DICOT 929.687-030, semi-skilled with an SVP of 3, heavy exertional level; and, sales representative, DICOT 250.357-022, light exertional with SVP of 5, but performed up to the medium exertional level. (Tr. 57-58). None of the jobs had transferable skills. (Tr. 58).

The ALJ posed the following hypothetical question to the VE:

7

> [A]ssume that the hypothetical individual is limited to the following. The hypothetical individual would fall within the following exertional category of light with the following further restrictions…. Never be required to climb ladders, scaffolds, and ropes, occasionally climb ramps and stairs. Occasionally, balance, stoop, kneel, crouch, and crawl. The hypothetical individual would be limited insofar as there would be restrictions from height. I am sorry. The restrictions are from hazards in the workplace, such as heights or machinery, but be able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, approaching people, or vehicles.

(Tr. 58-59).

The VE testified that such an individual could perform Plaintiff's past relevant work as a sales clerk "as it is customarily performed," but not as it was actually performed. (Tr. 59). In addition, the VE identified the following jobs that such an individual could perform: mail clerk, DICOT 209.687-026, unskilled with an SVP of 2, light exertional (less than 90,000 jobs nationally); marker, DICOT 229.587-018, unskilled with an SVP of 2, light exertional, (over 260,000 jobs nationally); and, office helper, DICOT, 239.567-010, unskilled position with an SVP of 2, light exertional (over 100,000 jobs nationally). (Tr. 61). The VE indicated that her testimony was consistent with the DICOT. (Tr. 61).

The ALJ inquired "how often would an individual doing a job as a sales clerk, how often would they be able to be away from their work station, they're doing their job and still be and still fall within the parameters of being employable competitively?" The VE testified that a sales clerk will only have breaks during the scheduled breaks," and "need to be present at their work station the whole time." (Tr. 60). The VE explained the break schedule as "15 minutes in the morning, 15 minutes in the afternoon, and customarily a 30 minute break for lunch." (Tr. 60). When questioned by Plaintiff's counsel, the VE testified that an individual requiring an at-will use of the bathroom would be unable to perform Plaintiff's past relevant work. (Tr. 62).

8

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the

national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act (the "Act") through December 31, 2018.

2. The claimant engaged in substantial gainful activity during the following periods: January through March 2013 (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe impairments: human immunodeficiency virus, obesity and diarrhea (20 CFR 404.1520(c) and 416.920(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except that the claimant may occasionally balance, stoop, kneel, crouch, crawl, use ramps and stairs, but may never use ladders, ropes or scaffolds; the claimant must avoid all exposure to workplace hazards, including unprotected heights and dangerous moving machinery, but is able to avoid ordinary hazards, including boxes, on the floor, doors ajar, approaching people or vehicles.

7. The claimant is capable of performing past relevant work as a sales clerk (DOT#290.477-014), having a light exertional level designation [but which the claimant performed at the medium level of exertion] and a specific vocational preparation factor of three. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

       8.       The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2012, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 13-20).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. Credibility of Limitations Related to Diarrhea

In both the first and second assignment of error, Plaintiff asserts that the ALJ failed to properly consider the symptoms related to his diarrhea and failed to conduct a proper credibility finding concerning Plaintiff's claims of frequent bathroom use stemming from chronic diarrhea.

The first assignment of error does not actually identify any violation of an applicable statute, regulation, or case law, and merely avers that the ALJ did not properly evaluate Plaintiff's diarrhea symptoms. (R. 13, PageID# 537-539). Plaintiff does cite Social Security ("SSR") Ruling 15-1p, which provides guidance on how the Social Security Administration evaluates interstitial cystitis (IC), a urinary disorder. 2015 WL 1292257 (Mar. 18, 2015). Part IV of that SSR sets forth a two-step symptom evaluation process for IC, which largely mirrors the two-step process used in evaluating the credibility of all symptoms. Plaintiff also acknowledges that there is no comparable SSR applicable to diarrhea. (R. 13, PageID# 538). Furthermore, Plaintiff does not identify medical source opinions that confirm the frequency of Plaintiff's bowel movements, as they merely record Plaintiff's subjective statements. Therefore, Plaintiff's first argument, at its heart, is a merely the same credibility claim as set forth in the second assignment of error.

According to SSR 96-7p, 1996 WL 374186 (July 2, 1996) (as well as SSR 16-3p), evaluating an individual's alleged symptoms entails a two-step process. First, an ALJ must determine whether a claimant has a "medically determinable impairment" that could reasonably produce a claimant's alleged symptoms.[5] *Id*. at *2. The ALJ's decision clearly found the first

---

[5] SSR 16-3p supercedes SSR 96-7p, 1996 WL 374186 (July 2, 1996), which was in effect at the time of the August 11, 2015 hearing. While there is not unanimity on the issue, the court declines

12

step was satisfied and states that Plaintiff's impairments "could reasonably be expected to produce some of the symptoms he has alleged." (Tr. 23). Once step one is satisfied, when considering the intensity, persistence, and limiting effects of an individual's symptoms," an ALJ should consider the following seven factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures, other than treatment, an individual uses or has used to relieve pain or other symptoms; and, (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p at *3.

However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). "[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) ("[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded.")(citations omitted).

Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective

---

to apply SSR 16-3p retroactively.

complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) ("the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation"). "It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" SSR 96-7p, 1996 WL 374186 at *2.[6] Rather, an ALJ's "decision must contain *specific reasons* for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. *Id*. at *2. "While in theory [a court] will not 'disturb' an ALJ's credibility determination without a 'compelling reason,' *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

Here, the ALJ expressly acknowledged he must follow a two-step process to determine whether Plaintiff's symptoms, including chronic and frequent diarrhea, were credible. (Tr. 17). Contrary to Plaintiff's assertion that the ALJ failed to consider the effects of his diarrhea, namely the need to use the bathroom on an hourly basis, the ALJ addressed Plaintiff's alleged limitations as follows:

> In terms of the claimant's alleged diarrhea, he was so diagnosed, on June 9, 2014 (5F/ l). While this finding would be consistent with the claimant's allegations of

---

[6] SSR 16-3p merely replaced the term "credible" in this sentence with the terms "supported or consistent." 2016 WL 1119029 at *9.

> using the bathroom on an "hourly" basis (5E/3), the record, when considered as a whole, is not supportive of the contention that the existence of this impairment would be preclusive of all types of work.
>
> The source of this impairment has been attributed to multiple causes, including side effects of medication (5E/9) and undiagnosed irritable bowel syndrome (11F/7). However, it does seem clear that the claimant's co-morbid human immunodeficiency syndrome is not causally connected. Treatment notes, dated June 9, 2014, note previous, negative "work-ups" by infectious disease specialists (5F/1), and an examination, comprehensive at the microbiology level and for parasitic involvement was negative in all respects on October 23, 2013 (8F/35-38).
>
> The claimant has reported that his impairment has been present for over forty years, long preceding his other diagnoses (6F/4), a statement of considerable import, given his impressive and consistent work history (7D). In addition, careful note is made of the claimant's report that he can shop for groceries once per week and attend church once per week, each in increments of two hours (SE). These increments are significant, of course, because a standard work schedule pre-supposes a scheduled break after each two hours in the workday.
>
> Until a recent "flare" in July 2015 (11F/2), this impairment had remained "stable" across the period relevant to this claim (6F/4), (11F/7). This "flare" generated treatment with prescription medications (11F/4), for the first time within the period relevant to this claim (3E/5), (19E), but too recent an event to determine either the efficacy of the medication or whether this increase in symptoms will be chronic, or transient.

(Tr. 17-18).

Plaintiff contends that his testimony related to the frequency with which he had to use the restroom, if credited in its entirety, would preclude him from performing his past relevant work as a sales clerk based on the VE's testimony that such jobs only allow scheduled breaks and sales clerks need to be present at their work station the whole time. (R. 13, Tr. 60). While the decision could have been more explicit, it is apparent when reading the decision as a whole that the ALJ did not credit Plaintiff's claimed frequency of bathroom use, as the RFC did not contain the need for hourly bathroom breaks or an at-will bathroom use option. (Tr. 16-17). It is clear from the portion of the decision quoted above that the ALJ acknowledged Plaintiff's alleged symptom—

15

the need for frequent bathroom beaks due to diarrhea—but did not credit the alleged severity of the symptom.[7]

The ALJ's discussion reveals that he considered several of the relevant factors in coming to this conclusion. Thus, ALJ's credibility determination, which is entitled to considerable deference, comported with the requirements of SSR 96-7p. Further, "[a]n ALJ need not analyze all seven factors, but should show that he considered the relevant evidence." *Alvarado v. Colvin*, No. 3:15cv102, 2016 U.S. Dist. LEXIS 27117 (N.D. Ohio, Jan. 5, 2016) (White, M.J.), *adopted by* 2016 WL 825654 (N.D. Ohio Mar. 3, 2016)(Carr, J.); *see also Mills v. Comm'r of Soc. Sec.*, No. 1:16-CV-286, 2016 WL 7173355 at *4 (W.D. Mich. Dec. 9, 2016) ("[T]here is no requirement that the ALJ explicitly discuss every factor. Rather under SSR 96–7p, the ALJ is required only to 'consider' the seven-listed factors."); *McKennon v. Soc. Sec. Admin.*, No. 1:14cv102, 2017 WL 2334249 at *9 (M.D. Tenn. May 30, 2017) (same); *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) (Baughman, M.J.) (same).[8]

Plaintiff's brief does not identify any actual error in the ALJ's credibility analysis, but rather merely suggests that Plaintiff's statements as to the frequency of his diarrhea were credible because he had made similar complaints to physicians. (R. 13, PageID# 540.) It is not this

---

[7] The lack of any medical source opinions confirming the severity/frequency of Plaintiff's diarrhea related symptoms, or their impact upon Plaintiff's ability to work, was not lost upon the ALJ. The ALJ's decision noted that Dr. Watkins completed a "listings" questionnaire, which indicated Allison did not meet listing 14.08, but offered no opinion regarding his residual function. (Tr. 19) Moreover, State Agency doctors Bolz and Das determined that Allison could perform a full range of medium work. (Tr. 19, 77-79, 84-86, 95-97, 104-106). As such, the ALJ explicitly found that "[n]o other treating or examining physician or other medical health provider [aside from Dr. Watkins and State Agency doctors Bolz and Das] rendered an opinion relevant to the formulation of the residual functional capacity." (*Id.*)

[8] The seven factors set forth in SSR 96-7p remain largely unchanged in SSR 16-3p.

Court's function, however, to conduct a *de novo* credibility determination. Rather, this court reviews whether the ALJ actually performed a credibility evaluation, and whether said evaluation complied with applicable laws, rulings, regulations. Plaintiff does not identify any error by merely advocating for an alternative interpretation of the evidence. After noting that Plaintiff's diarrhea did not stem from either infectious diseases or parasites as noted by the objective medical evidence (Tr. 18), the ALJ appropriately considered several of the relevant seven factors. For example, the ALJ specifically discussed some of Plaintiff's activities such as shopping for groceries and attending church without the need to use the restroom. (Tr. 18). Given Plaintiff's hearing testimony that church lasted 2.5 to three hours and that he was all right there (Tr. 55), it was not unreasonable for the ALJ to conclude that breaks every two hours was sufficient to accommodate Plaintiff's bowel movement frequency and that Plaintiff's testimony in this regard was inconsistent with the claim of more frequent bowel movements. The ALJ also considered Plaintiff's treatment or, more accurately the lack thereof, for Plaintiff's chronic diarrhea. The ALJ specifically noted the lack of prescription medications up until July of 2015, and Plaintiff fails to point to any medication given to Plaintiff beyond the over-the-counter medication Immodium. (Tr. 18). Again, it was not unreasonable for the ALJ to conclude that the lack of any significant treatment for diarrhea undermined the Plaintiff's allegations as to the severity (i.e. frequency/urgency) of his diarrhea. The mere mention of diarrhea in treatment records, contrary to Plaintiff's assertions, does not confirm the subjective severity of his symptoms. "[I]t is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment." *Clark ex rel. S.R.C. v. Comm'r of Soc. Sec. Admin.*, No. 5:12cv1745, 2013 WL 3007154 at *2 (N.D. Ohio June 11, 2013) (Boyko, J.)(c*iting Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir.1990) (diagnosis of impairment does

17

not indicate severity of impairment)); *accord Baker v. Colvin,* No. 1:15cv910, 2016 WL 4128435 at *9 (N.D. Ohio Aug. 3, 2016) (McHargh, M.J.)

Because the ALJ expressly considered Plaintiff's claimed symptom that his diarrhea required bathroom use on an hourly basis (Tr. 17), explained why he was discounting that allegation, and rooted that explanation in a consideration of several of the factors he is required to consider under SSR 96-7p, Plaintiff's second assignment of error is without merit.

### 2. Step Five of the Sequential Evaluation

Even Plaintiff's third assignment of error is predicated on a finding that Plaintiff's statements relating to the frequency of his diarrhea is fully credible. Specifically, Plaintiff maintains that he cannot perform his past relevant work due to the need for an at-will bathroom use requirement. (R. 13, PageID# 541-542). If he cannot perform his past relevant work, Plaintiff contends that Grid Rule § 202.06 would direct a finding of disability based on his age, education, and lack of transferable skills. (R. 13, PageID# 541-542). Plaintiff's argument is moot and essentially rehashes his previous credibility argument, as it is predicated on a finding that the ALJ should have credited the need for at-will bathroom use stemming from chronic diarrhea, which would have nullified his ability to perform his past relevant work. "[I]f an ALJ finds that a claimant's residual functional capacity matches her past relevant work, the ALJ makes a determination of non-disability at that point (Step 4) and does not move on to Step 5." *Brewster v. Barnhart*, 145 Fed. Appx. 542, 548 (6th Cir. 2005). Plaintiff's argument is meritless, because "[t]he medical-vocational guidelines are not applicable until the fifth step of the evaluation process." *Meschko v. Comm'r of Soc. Sec.*, 1999 WL 801572 at *1 (6th Cir. Ohio Sept. 28, 1999) (finding no error in the ALJ's failure to consider the medical-vocational guidelines at Step Five, because the evaluation process ceased at Step Four).

Therefore, Plaintiff's third assignment of error is moot given the above finding that the ALJ did not err in the credibility evaluation of Plaintiff's alleged symptoms.

## IV. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: June 23, 2017

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981)**; *Thomas v. Arn*, **474 U.S. 140 (1985)**, *reh'g denied*, **474 U.S. 1111 (1986).**